## Michael *v.* Stuber, Appellant.

*Replevin—Automobiles—Sale or lease — Fraud — Question for jury.*

In an action to recover possession of an automobile, under the provisions of a bailment lease, the defense was that the transaction was a sale and not a bailment and that the defendant signed the lease through the misrepresentations of the plaintiff. Under such circumstances the case was for the jury, as to the question of fraud and a verdict for the plaintiff will be sustained.

The fact that the original intention of the parties was to make a sale, and that such was the legal effect of their first agreement did not prevent a change, while it was still executory, into a bailment with an alternative of future conversion into a sale, on the compliance of stipulated conditions.

*Contracts—Sales—Alternative of written instrument—Evidence.*

Where parties without fraud or mistake have put their engagements in writing, the law declares the writing not only the best but the only evidence of the agreement. While parol evidence is admissible to prove fraud and mistake, it is insufficient for the purpose unless clear, precise and indubitable. Testimony in contradiction of a written agreement amounts to nothing unless it is sufficient to warrant a chancellor in reforming it.

*Replevin—Breach of warranty—Evidence.*

In an action of replevin the issue is confined strictly to the ownership of the article replevied and evidence of a breach of warranty is not admissible.

Argued December 1, 1919. Appeal, No. 148, Oct. T., 1919, by defendant, from judgment of C. P. Northampton County, September T., 1917, No. 59, on verdict for plaintiff in the case of Frank H. Michael v. Jennie M. Stuber. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER·and LINN, JJ. Affirmed.

Replevin to recover possession of an automobile. Before STEWART, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $760 and judgment thereon. Defendant appealed.

At the trial the defendant made the following offer:

"I now propose to interrogate the witness and have her detail; that after she purchased the car on May 8, 1917, and before August 6, 1917, at different times in that period she went to Mr. F. H. Michael and informed him that the lighting system did not work properly; that the self-starter would not work at all; that there was a large dent in the back of the body of the car; that the steering rod was out of repair and did not work; that the spring clips were missing; that the holder for the top was missing; that the tires were not new tires but used tires and had signs of extreme wear; that two of the tires had two large blow-out patches in them showing that the tires had blown out; that the tubes also showed signs of being old ones, having a number of patches on them; that the blow-outs shown in the tires and the patches showed that the condition of the inner tubes was not caused by any use which she gave them. That the said F. H. Michael replied that he would fix these matters; that the tires did look like old tires but that he would adjust the matter; that the self-starter was apparently not properly adjusted and he would write to the company and get a rule book and endeavor to fix the same; that the lighting apparatus was evidently not properly connected and that he would like-

wise write to the company and find out how to fix the same; that the steering rod apparently had a defect in the material used and that the same would be replaced by him; that the clips would be gotten by him for the spring and replaced; that the holder for the top would be gotten by him and replaced. That in these conversations had Mrs. Stuber was acknowledged as the owner of the car by the said F. H. Michael, and that he failed to keep his promises relative to the fixing up of the matters complained of and has not to this date done so. That when the note became due she refused to pay same. That before the note became due she stated to Mr. Michael that unless he would fix up these different matters complained of she would refuse payment of the note.

"Mr. Smith: That is objected to, as being incompetent, irrelevant and immaterial.

"The Court: The objection is sustained. Bill sealed for defendant."

The court below filed the following opinion dismissing the defendants motions for a new trial and for judgment non obstante veredicto.

These were motions for a new trial and for judgment non obstante veredicto. They were filed on January 24th last, in time, but the brief was not furnished until last week. Counsel must bear in mind section 193 of the Rules of Court provides that a brief in support of a motion shall be delivered to the trial judge not later than the second Monday after the trial. An intelligent discussion of the case can be secured when this rule is complied with as the matter is fresh in the mind of the judge immediately after the trial. When there is a delay of two months as in this case, it requires more than double the amount of time to get at the facts and the authorities. We will say, however, that in the present case our labor was made as light as possible by the excellent brief that has been furnished by the counsel for the defendant. We have carefully examined our charge and our rulings, and we do not think it is necessary to

discuss all the reasons set forth in the motion for a new trial. We shall confine the discussion to the matters particularly insisted on in the brief. Two facts appear in this case; one, that the defendant has an automobile which she has not paid for, and the other, that either the plaintiff or the defendant is guilty of perjury. As to the latter proposition, there can be no dispute. The plaintiff came into court with a lease signed by the defendant. She and her family undertook to destroy the legal effect of the written paper by swearing that a fraud had been practiced upon her by the plaintiff. A jury decided that question in favor of the plaintiff. We are entirely satisfied with their verdict. They are the parties to pass upon that question, and not the court. The only significance of many of the authorities relied upon by the learned counsel for the defendant, such as El Dorado Jewelry Co. v. Hopkins, 34 Pa. Superior Ct. 446; and El Dorado Jewelry Co. v. Hartung, 36 Pa. Superior Ct. 463, is that the question of fraud is for the jury, and that it should be submitted to the jury. The contention of the counsel for the defendant that we must submit the question as to whether she bought the automobile on May 8, 1917, or not to a jury, and all the considerations which he so strenuously argues, under the Sales Act of May, 1915, P. L. 543, are immaterial. In our charge to the jury, after referring to the negotiations between the parties, we said: "But, in the view of the law which the court takes and which I say to you should govern in this case, it is not a very important matter what the result of the negotiations on the 8th of May were, whether they resulted in an absolute sale or whether they resulted in a conditional sale, it is unimportant, it seems to me in this case, because the law undoubtedly is that if they originally intended to make a sale and even if that sale had been consummated, it being undisputed that she never paid this note, has not paid it to this day, that does not prevent the parties if they get together, and if they agree, from changing

their original agreement of sale into one of bailment. And so far as the question of consideration is concerned, it being admitted that that note was not paid, the fact that there were these unexecuted undertakings on her part, that this note was not paid, that would be a sufficient consideration for the cancellation of the first contract of sale and for the substitution of this lease, if you find that was the fact, between the parties." We believe that statement to be absolutely correct. The confusion in the mind of the defendant's counsel results from the fact that he fails to distinguish between the law relating to sales and delivery of possession as between the parties, and that which governs when the rights of creditors attach. So far as the parties are concerned, the question of the possession of the automobile is governed entirely by their agreement. Where the rights of creditors are concerned, the retention of personal property by the vendor is fraudulent per se. The case of Clow v. Woods, 5 S. & R. 275, is illustrative of the law on that subject. It can be admitted that there was a sale to the defendant, but if the plaintiff's contention is believed by the jury, there is nothing in the law which prevents their converting the original sale into a leasing. In Goss Printing Press Co. v. Jordan, 171 Pa. 474, it was held: "The fact that the original intention of the parties is to make a sale, and that such is the legal effect of their first agreement, does not prevent a change while it is still executory into a bailment with an alternative of future conversion into a sale on the compliance with stipulated conditions." That doctrine was followed in National Cash Register Co. v. Shurber, 41 Pa. Superior Ct. 187. That there was a consideration for the lease clearly appears from the authorities. In McNish v. Reynolds, Lamberton & Co., 95 Pa. 483, it was held: "When, at the moment for the performance of a contract by one party both agree to a postponement the new contract is as valid as the old, and the mutual promises, the one to deliver and the other to accept and pay, are ample con-

siderations to sustain the new contract." In Flegal v. Hoover et al., 156 Pa. 276, it was held: "The parties to a contract may at any time rescind it, either in whole or in part, by mutual consent, and the surrender of their mutual rights is sufficient consideration." In Dreifus, Block & Co. v. Salvago Co., 194 Pa. 475, it was held: "The mutual unexecuted undertakings of an existing contract are a sufficient consideration for the cancellation of such a contract and the substitution of a new one with different terms; and it is immaterial if, for a moment during the interval, there is technically a breach of the old agreement, since by the new agreement both parties treat the old one as an existing contract, and mutually agree to a rescission of it." It would have been clear error to have submitted the question to the jury whether the sale of May 8, 1917, was an absolute one or not. That was not the issue. The lease was admittedly signed by the defendant. The fact that there was no seal after her name is immaterial. The plaintiff was the lessor, and a seal was after his name. That is sufficient. The real issue in this case was that which was submitted to the jury at the time of the trial, to wit, was a fraud practiced upon her? She testified that she had not read the paper. What we charged the jury upon that subject is fully justified by Greenfield's Est., 14 Pa. 489, and other authorities. It is, however, contended that admitting that there was a question of fraud, we should have charged the jury that that question should be decided by them according to the weight of the evidence. The complaint is made: "5. The court erred in charging the jury that the fraud alleged by the defendant had to be proven by her beyond a reasonable doubt. 6. The court erred in his charge to the jury in overemphasizing the burden on the defendant to prove fraud, thereby practically taking away from the jury its function to decide whether or not a fraud was perpetrated upon her. ......10. The court erred in his charge to the jury in not adequately presenting the contention of the defend-

ant and in minimizing the effect of her testimony and her witnesses, in overemphasizing the contention of the plaintiff." The learned counsel in support of his position as outlined in above reasons, relies especially upon certain excerpts from the opinion of Mr. Justice WILLIAMS in Young v. Edwards, 72 Pa. 257. That' case is a leading case in Pennsylvania. It was tried before Judge DEAN, afterwards a justice of the Supreme Court. The assignment of error was, inter alia, to these words: "To set aside or vary this contract, to say that he shall pay only part of this amount or none of it, requires that the evidence of false representations, and that Young relied upon them, must be clear and explicit; must lead to satisfactory and certain conclusion. The law does not use the words 'weight of testimony' concerning evidence to overthrow and set aside solemn deeds and obligations; it uses stronger words, and demands that the evidence shall be clear and explicit, and lead to a satisfactory and certain conclusion." The Supreme Court reversed the lower court because of the use of the words "certain conclusions." Mr. Justice WILLIAMS in his opinion, quotes the very words of the definition of "reasonable doubt" from Starkie which Mr. Justice STEWART in Commonwealth v. Andrews, 234 Pa. 597, at page 608, said should be used by all trial judges in charging a jury in criminal cases. In other words, Mr. Justice WILLIAMS said that the criminal definition is the one which best applies to cases involving fraud. His words are: "It is all that the law requires, though such conviction may come short of absolute certainty." Again, in the very next case cited by the learned counsel for the defendant, Boyertown Nat. Bank v. Hartman, 147 Pa. 558, Judge ENDLICH had charged twice in reference to evidence to reform a deed so that it would include a man and his wife, that the jury must be satisfied of the fact of the failure to include her beyond a reasonable doubt. Mr. Justice STERRETT in approving of those instructions, quoted at length from Ott v. Oyer's Executrix, 106 Pa.

6, a case from this county. In that case Judge MEYERS was reversed for refusing to charge as we charged in this case. Mr. Justice TRUNKEY said: "To overthrow a written contract it is necessary that the parol evidence be clear, precise and satisfactory. It has sometimes been said that the evidence must be clear, precise and entirely satisfactory; or full, satisfactory and indubitable; but the context showed that such expressions did not mean that it is requisite that the evidence should lead to a certain conclusion." Again he said: "The law does not require proof so convincing as to leave no doubt resting on the minds of the jurors; it is enough if there be evidence to satisfy an unprejudiced mind, beyond reasonable doubt." The same expression "beyond a reasonable doubt" was approved by the Superior Court in Snyder v. Phillips, 25 Pa. Superior Ct. 648. These words, "clear, precise and indubitable," where the issue is fraud, are found in a multitude of cases. In the old case of Stine v. Sherk, 1 W. & S. 195, the syllabus is: "To set aside a solemn instrument between parties, and convert it into an obligation of different purport, on the ground of fraud or mistake, the evidence of it must be what occurred at the execution of the instrument, and should be clear, precise, and indubitable. And it is error to submit the question of fraud, in such a case, to the jury, upon slight, trivial, parol evidence." In Pioso v. Bitzer, 209 Pa. 503, it is said: "Where parties without fraud or mistake have put their engagements in writing, the law declares the writing not only the best but the only evidence of their agreement. While parol evidence is admissible to prove fraud and mistake, it is insufficient for the purpose unless clear, precise and indubitable. Testimony in contradiction of a written agreement amounts to nothing unless it is sufficient to warrant a chancellor in reforming it." In Graham v. Carnegie Steel Co., 217 Pa. 34, it is said: "In order to reform a deed on the ground of mistake, it must clearly appear by the testimony of witnesses who distinctly remember the

facts that a mistake was made and that the writing does not express the agreement. The testimony must be clear, precise and indubitable, and of such weight and directness as to carry conviction to the mind." In the late case of Thompson v. Schoch, 254 Pa. 585, the syllabus is: "In order to prove a contemporaneous parol agreement which is alleged to have induced the execution of a writing which is sought to be enforced, the witnesses in support of the alleged parol contract must be credible and their examination must show them to have a distinct recollection of the relevant facts and, in so far as their evidence must be mutually corroborative, they should, to a reasonable degree, show a common understanding of the particular matter in question. Their testimony must be clear, precise and indubitable before it can be permitted to overcome the documentary proof to which it is opposed." With respect to the contention that we overemphasized these rules, we refer to what Mr. Justice PAXSON said in Murray et al. v. New York, etc., R. R. Co., 103 Pa. 37, on pages 43 and 44, as follows: "Complaint is made that the learned judge, in his instructions to the jury said that, 'In order to alter a written contract, by adding a stipulation, alleged to have been omitted, there must be clear, precise and indubitable evidence that it was the understanding of both parties that it should be inserted in the writing.' And again, that 'To reform a written agreement on the ground of fraud or mistake, the evidence must be clear, precise and indubitable,' and this or similar language was repeated to the jury seven times, as we are informed by the ninth assignment. This instruction was not too strong, and as it was good law, its repetition to the jury could have done no harm. Speaking for myself, I do not think seventy times seven would have been too often; speaking for the court, I will confine myself to the repetitions stated in the asssignment. We do not wish to be misunderstood upon this question. If a solemn instrument like a deed, which has been upon record for many

years, can be reformed, and titles destroyed by parol evidence, which is anything short of 'clear and indubitable,' no one would care to hold real estate in Pennsylvania, for it would be a most uncertain holding. A deed ought to be worth something, yet it would possess little value if it could be set aside by loose testimony of parties in interest. Where the evidence of fraud, accident, or mistake is so direct and clear that a chancellor would reform the deed, it is one thing. Anything short of such evidence ought not to be submitted to a jury." We would not have been justified in taking this case from a jury on the ground that the defendant had signed the writing, and it must speak for itself, as contended by the learned counsel for the defendant in his first and second points. We believe that it was a proper case to submit to a jury, and the jury having found against the defendant, she is bound by their finding. In the reasons filed there is a reference to some of the court's rulings on questions of evidence as bearing on the matter of an absolute sale. There was, however, no reference to these matters in the brief, and we presume they were waived. As we said above, you can admit for the purpose of argument, that there was a sale, and it would not affect this case. Plaintiff stands and must stand on his lease. Defendant must admit she signed it. The sole question is, was a fraud practiced on her when she signed? If yea, then the automobile is hers. If not, it is his by the terms of the lease.

And now, March 31, 1919, motion for a rule for a new trial is refused. Motion for judgment non obstante veredicto is refused, and judgment is directed to be entered on the verdict in favor of the plaintiff upon payment of the jury fee, and the evidence taken upon the trial, is certified and filed and made part of the record.

*Errors assigned* were the charge of the court and answers to point (21) sustaining plaintiff's objection as quoted in bill of exceptions.

*William H. Schneller,* for appellant.

*C. F. Smith,* of *Smith, Paff & Laub,* for appellee.

OPINION BY HENDERSON, J., February 28, 1920:

The argument of the learned counsel for the appellant gives the impression that there was a misapprehension in regard to the issue involved in this litigation. The question was one of the right of possession of an automobile which the plaintiff alleged he owned and leased to the defendant. Through the writ of replevin he sought to recover the car because the stipulated consideration was not paid in accordance with the terms of the agreement. There was a prima facie showing of the title and right of possession in him. The defense was that the transaction between the parties was not the leasing of an automobile, but the purchasing of it; that the defendant entered into a parol agreement with the plaintiff on the 8th day of May, 1917, for the purchase of the automobile and paid $200 on the purchase price and gave her note to him for the balance; and that she took possession of it pursuant to the sale. She sought to avoid the effect of the lease introduced by the plaintiff by showing that although she signed the paper she did not read it and relied on the plaintiff's statement as to its import which was that it was designed to secure or continue the insurance on the car for the mutual advantage of the plaintiff and her; that nothing was said about a lease and it was not her intention to execute or deliver such a contract. She was corroborated by other members of her family as to what took place at the time the document was brought to her house when she attached her signature to it. The defense was therefore the assertion of ownership by purchase and a denial of the validity of the lease on which the plaintiff relied. An attempt was made to show that the plaintiff had failed to comply with his agreement by not furnishing certain parts of the automobile not attached to or

accompanying it at the time it was delivered.   Much
evidence was introduced explanatory of the conduct of
the parties in the transaction which had little or no
bearing on the point in controversy.   Twenty of the
twenty-one assignments of error challenge the accuracy
of the court in parts of the charge and the answers to
the points; the twenty-first relates to the rejection of
evidence contained in an offer to show that the plaintiff
had not complied with his agreement with Mrs. Stuber
with reference to the furnishing of new tires, the ad-
justment of a self-starter, the connecting of the lighting
apparatus and other deficiencies and defects stated in
the offer.   It is sufficient to say with reference to the
last assignment that it covers a field of inquiry not
raised by the issue.   The car either belonged to the plain-
tiff or to the defendant; the proceeding was designed
to determine which was entitled to it.   The defendant
having given a property bond and kept the machine
could not thereby change the issue.   The condition of
the property was therefore not involved.   If the plain-
tiff made promises which he had not kept, a different
procedure would be necessary to enforce that obligation.
We do not deem it necessary to examine seriatim the
criticisms of the action of the court.   Taking the por-
tions excepted to with their context, we fail to find such
errors as warrant a reversal.   The question before the
court was clearly and concisely stated to the jury and
the case was presented in harmony with the legal prin-
ciples involved.   The opinion of the learned trial judge
on the motion for a new trial covers the subject and the
authorities cited are a justification of the instructions
given to the jury.   It was clearly the right of the trial
judge to say that the question whether there had been
a sale to the defendant on the 8th of May might not be
considered by the jury a matter of consequence for the
whole of the plaintiff's case was founded on the lease
offered in evidence.   There can be no doubt of the right
of the parties to the contract to change the transaction

from an absolute sale to a buyer's lease so far as their individual interests are concerned; no creditors having raised any objection. The indebtedness of the defendant to the plaintiff was a sufficient consideration as is shown by many cases, and the only issue left therefore was the allegation by the defendant of fraud in procuring the lease. The instructions of the court on the weight of the evidence necessary to set aside such instrument on the ground of fraud were within the limits prescribed in numerous decisions of our courts; some of which are cited in the opinion of the court below. The case was an inquiry of fact therefore to be disposed of by the jury. The verdict having gone in favor of the plaintiff, we find no legal issue which calls for our interference.

The assignments are overruled and the judgment affirmed.